**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-1011

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Otis Tugwell, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 10, 1997

Filed: September 2, 1997

_____

Before RICHARD S. ARNOLD, Chief Judge, HENLEY, Senior Circuit Judge, and
WOLLMAN, Circuit Judge.

_____

WOLLMAN, Circuit Judge.

Otis Tugwell appeals from the district court's[1] denial of his motion to suppress.
We affirm.

---

[1]The Honorable George F. Gunn, Jr., United States District Judge for the Eastern
District of Missouri, adopting the report and recommendation of the Honorable David
D. Noce, United States Magistrate Judge for the Eastern District of Missouri.

# I.

On May 4, 1996, Tugwell arrived in St. Louis, Missouri, from Los Angeles, California, on a Greyhound bus. An interdiction team consisting of five St. Louis police officers, one United States customs officer, and a drug-sniffing dog, met the bus at the St. Louis station. Prior to the passengers' departing the bus, the members of the team informed the passengers of their identity and their purpose of preventing narcotics from entering St. Louis. The team requested that the passengers submit to a sniff-search of their luggage. None of the passengers objected.

Just prior to the search, a man departing the bus, later identified as Tugwell, told officers that he urgently needed to use the restroom; he again expressed his need to use the restroom when he handed his carry-on bag to the officers. When the drug dog alerted to the bag, the officers requested and received permission to search it. No drugs were found therein.

The officers then had the dog sniff-search the checked luggage. Detective Linda Mopkins, one of the team members, saw Tugwell position himself against a nearby wall to observe the dog's search, despite his earlier statement that he needed to use the restroom. As the dog alerted to a grey suitcase, Tugwell walked quickly into the bus terminal without claiming any luggage. Mopkins went into the terminal in search of Tugwell. When the two made eye contact Tugwell exited the terminal. Mopkins followed him outside, but could not locate him.

Following the sniff-search of the checked luggage, which took only two or three minutes, the passengers were advised they could collect their luggage. All luggage except the grey suitcase was claimed. After approximately fifteen minutes, the unclaimed suitcase was taken to the baggage claim area inside the bus terminal. Greyhound personnel made two announcements to notify the owner to pick up the suitcase. Still unclaimed, the suitcase was placed in a room with other luggage.

Another sniff-search was conducted, and the dog again alerted to the presence of drugs. A team member thereupon opened the suitcase and found several bags of cocaine.

Approximately two hours later, Tugwell returned to the bus station and attempted to claim the suitcase "for a friend." Unbeknownst to Tugwell, a Greyhound supervisor notified St. Louis police. The supervisor then informed Tugwell that he needed identification in order to obtain the suitcase. Tugwell left the terminal and returned five minutes later with identification. When police arrived, Tugwell initially identified himself as Paul Lewis, but later admitted he was Otis Tugwell, the owner of the grey suitcase. Tugwell was arrested and indicted for possession with intent to distribute cocaine.

The district court denied Tugwell's motion to suppress the cocaine found in the suitcase, concluding that Tugwell had abandoned any possessory interest in the suitcase and therefore had no expectation of privacy. Tugwell waived his right to a jury trial, was found guilty, and was sentenced to 312 months' imprisonment.

## II.

We review the district court's determination of abandonment for clear error. See United States v. Segars, 31 F.3d 655, 658 (8th Cir. 1994). Accordingly, "we must affirm the district court's abandonment finding unless its decision is 'unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, in light of the entire record, we are left with a firm and definite conviction that a mistake has been made.'" United States v. Ruiz, 935 F.2d 982, 984 (8th Cir. 1991) (quoting United States v. Meirovitz, 918 F.2d 1376, 1379 (8th Cir. 1990)) (other citations omitted).

A warrantless search of abandoned property does not implicate the Fourth Amendment, for any expectation of privacy in the item searched is forfeited upon its abandonment. See Segars, 31 F.3d at 658. The issue "is not abandonment in the strict

property right sense, but rather, whether the defendant in leaving the property has relinquished her reasonable expectation of privacy so that the search and seizure is valid." United States v. Hoey, 983 F.2d 890, 892-93 (8th Cir. 1993) (other citations omitted). Whether an abandonment has occurred is determined on the basis of the objective facts available to the investigating officers, not on the basis of the owner's subjective intent. See United States v. Rem, 984 F.2d 806, 810 (7th Cir. 1993). "This determination is to be made in light of the totality of the circumstances, and two important factors are denial of ownership and physical relinquishment of the property." United States v. Nordling, 804 F.2d 1466, 1469 ( 9th Cir. 1986). We consider only the information available to the officers at the time of the search. See Rem, 984 F.2d at 811 ("In order to determine whether a pre-search abandonment has occurred, the flow of information considered stops at the moment the police officer opened the suitcase.").

Based on the totality of the circumstances, we cannot say that the district court's finding of abandonment is clearly erroneous. Given Tugwell's abrupt departure from the station after witnessing the dog alert to the presence of drugs in the suitcase, it was reasonable for the officers to assume that the grey suitcase belonged to him. Further, it was a logical conclusion that after witnessing the dog's alert Tugwell would not return to the station and attempt to reclaim the suitcase.

Moreover, Tugwell's own actions were inconsistent with a continued expectation of privacy. Tugwell refused to claim the bag after three announcements, tantamount to a denial of ownership, and he left the suitcase unguarded and unlocked in a public place, both of which are important factors in finding abandonment. See Nordling, 804 F.2d at 1469. See also Ruiz, 935 F.2d at 984-85 (disclaiming ownership of luggage was evidence of abandonment); United States v. Williams, 569 F.2d 823, 826 (5th Cir. 1978) (leaving a trailer unlocked and unguarded in a parking area was evidence of abandonment).

Tugwell's later attempt to reclaim the suitcase does nothing to undermine this conclusion, for his conduct in abruptly departing the station and then returning some two hours later was "transparently an abandonment of the tight grip of ownership and reliance solely on the feeble hope of re-acquisition." Id. See also Nordling, 804 F.2d at 1470 (rejecting defendant's argument that his later admission of ownership constituted a reassertion of interest in the property because he left the bag under "circumstances in which it was virtually certain that the bag would be opened, inspected and turned over to law enforcement authorities before he could possibly attempt to re-exert physical control.").

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.